# *United States Court of Appeals*

**FIFTH CIRCUIT
OFFICE OF THE CLERK**

**LYLE W. CAYCE
CLERK**

**TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130**

January 04, 2023

**FILED**
January 04, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____Jay Vicha_____
DEPUTY

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 22-50036   Singh v. Riversource Life Ins
                            USDC No. 1:19-CV-541

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                    Sincerely,

                                     LYLE W. CAYCE, Clerk

                                     By: _____
                                     Melissa V. Mattingly, Deputy Clerk
                                     504-310-7719

cc:
    Ms. Danya Wayland Blair
    Mr. Weston Morgan Davis
    Mr. Benjamin G. Kemble
    Mr. Gregory L. Reed
    Mr. Lonnie Roach



# United States Court of Appeals for the Fifth Circuit

**Certified as a true copy and issued as the mandate on Jan 04, 2023**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

United States Court of Appeals
Fifth Circuit
**FILED**
December 13, 2022
Lyle W. Cayce
Clerk

No. 22-50036

_____

Jyoti Singh,

*Plaintiff—Appellee*,

*versus*

Riversource Life Insurance Company,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-541

_____

Before Clement, Duncan, and Wilson, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that defendant-appellant pay to plaintiff-appellee the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 13, 2022
Lyle W. Cayce
Clerk

No. 22-50036

Jyoti Singh,

*Plaintiff—Appellee*,

*versus*

RiverSource Life Insurance Company,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-541

Before Clement, Duncan, and Wilson, *Circuit Judges*.
Per Curiam:*

  A jury ruled that Appellant RiverSource Life Insurance Company breached its contract with Appellee Jyoti Singh by rejecting her claim for disability benefits after Singh suffered an epileptic seizure and associated cognitive impairment that prevented her from returning to her prior occupation. On appeal, RiverSource challenges various decisions by the

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

district court and asks us to reverse and remand for a new trial. Disagreeing with RiverSource's arguments, we affirm.

I.

A.

Singh applied for life and disability insurance from IDS Life Insurance Company (RiverSource's predecessor) in 2003. In 2004, Singh, Manu Rehani (Singh's husband), and another individual founded First Pacific Investments, L.L.C., a real estate investment and development company. Singh helped select and develop properties in and around Portland, Oregon, and was responsible for the company's financial planning.

Singh was issued the Policy relevant to this case on February 15, 2004. The Policy limits coverage to the insured's "Period of Disability," which begins the first day the insured is "Disabled," as defined by the Policy, and ends when the insured is no longer disabled. "Total Disability" coverage applies only if the insured is "[u]nable to perform the material and substantial duties of [the insured's] Regular Occupation," defined as the job or occupation (i) in which the insured works "on a full time basis" or (ii) from which the insured derives a majority of the insured's earned income at the time of disability. RiverSource can "deny benefits or rescind coverage" if an insured's application "answers are incorrect or untrue."

In May 2005, about two years after applying for the Policy, Singh experienced a "dreamy state," collapsed in the shower, and lost consciousness for two hours. A doctor determined the cause was a seizure and found scarring on Singh's right hippocampus. He diagnosed Singh with secondarily generalized epilepsy and started her on anti-seizure medications. Singh's epilepsy was largely under control until 2012, when she started experiencing more aggressive seizures, which were counteracted with more aggressive anti-seizure medication.

Around this time, Singh and Rehani separated and divorced. Singh moved to Austin, Texas, but continued to make periodic trips to Portland to inspect properties for First Pacific. She also continued managing the company's finances from Austin. In 2015, Singh formed a company to develop commercial property in and around Austin.

That same year, Singh suffered a seizure while driving her daughter to school, leading to a serious accident that injured Singh and her daughter and killed the other driver. At trial, Singh testified that, after the accident, she experienced cognitive changes, including markedly impaired executive functioning. She testified that her cognitive changes made it impossible to handle finances; that she could not organize her or her children's schedules; and that she suffered impaired short-term and long-term memory. The seizures worsened to the point that they could not be controlled by medication. Singh has not worked since the accident.

On June 6, 2016, Singh contacted the financial advisor who helped her purchase the Policy to inquire about filing a claim for disability income benefits with RiverSource. Two days later, RiverSource sent a letter to Singh confirming notice of the claim and requesting completion of the attached forms "[t]o initiate a claim." Singh completed the forms and returned them to RiverSource on July 26, 2016. In answering "[h]ow . . . [her] condition affect[s] [her] ability to work," Singh mentioned her difficulties with decisionmaking, organization, short-term memory, concentration, fatigue, post-seizure recovery, and dizziness. Her physician agreed she could not work but noted that their "goal is seizure freedom which [they] are working towards. When th[at] happens[,] then [Singh] can re-evaluate returning to the workforce." Singh herself wrote that she "plan[s] to return to work . . . after 6 months seizure free."

No. 22-50036

After initially reviewing Singh's forms, RiverSource notified Singh that she may qualify for Total Disability benefits, but it asked for more information, such as personal- and business-tax information. Singh provided the requested information, which specified that she was "CEO of Nettle Lynx Corp and . . . Manager/CEO of KernJoon LLC." On September 9, 2016, RiverSource requested additional information about Singh's "Regular Occupation" and expressed confusion over the information she previously provided.[1]

RiverSource's review continued for several months, and, on February 23, 2017, it denied Singh's Total Disability claim based on lack of "evidence of an Injury or Sickness of such severity[] that would preclude [Singh] from performing the material and substantial duties of [her] Regular Occupation." A year later, one of Singh's physicians wrote RiverSource to reiterate that "[d]ecision-making is difficult for patients who have experienced" the type of seizures that Singh suffered from. He gave "[his] professional recommendation that [Singh] not continue in her previous profession." On February 16, 2018, RiverSource responded to Singh that her reconsideration request indicated she was working in some capacity and requested more information to evaluate the claim under the Policy's Partial Disability benefit.

In June 2018, Singh hired a lawyer. Over the next eight months, she provided RiverSource additional documentation, including an Attending Physician's Statement from Dr. Holcomb, dated September 14, 2018, explaining that Singh's impairment resulted in significant-to-severe limitation of her functional capacity. Dr. Holcomb also stated that, while the goal of Singh's treatment was freedom from seizures and that she may

---

[1] In particular, Singh's tax information related to Nettle Lynx Corp showed no gross sales and no compensation in 2015.

eventually be able to engage in low-stress pursuits or professions, she could never return to the regular occupation she pursued before December 3, 2015. Despite all this, RiverSource maintained its coverage denial, stating it "was unable to establish any earned income from work activities for Ms. Singh in 2015, or clarify any work other than negotiating a note and deed of trust between October 1, 2015 and October 20, 2015."

Singh eventually elected to undergo craniotomy and laser brain surgery in late 2019, which burned away her hippocampus and amygdala on the right side of her brain. According to Singh's testimony, this procedure stopped reoccurrence of the seizures but did not improve Singh's cognitive function. Her ex-husband testified that he has personally observed Singh's reduced mental capacity—*i.e.*, impaired memory and executive functioning. RiverSource claims it was not aware of Singh's surgery until her deposition in February 2021.

B.

Singh sued RiverSource on May 21, 2019, alleging breach of contract and violation of various provisions of the Texas Insurance Code. Her second amended complaint, the operative one, was filed on January 9, 2020. Singh alleged she suffered from controlled epilepsy prior to December 3, 2015, but then "became disabled due to intractable epilepsy," when she "experienced an increase in the frequency and severity of her seizures and, despite medication, began to experience break-through Generalized Tonic-Clonic (GTC) seizures."

RiverSource answered on July 29, 2020. The parties proposed, and the district court approved, a scheduling order that required all amended or supplemented pleadings to be filed by November 12, 2020; discovery to be completed by April 9, 2021; and any dispositive motions to be filed by April 23, 2021. The order set the jury trial for November 2021.

No. 22-50036

RiverSource claims that, during discovery, it first learned about documents (1) establishing Singh's undisclosed history of epilepsy symptoms and (2) revealing Singh asked her medical provider in July 2017 to alter her records to conceal dates of the inception of her epilepsy and related "lifelong" health issues. Consequently, on April 20, 2021, RiverSource wrote to Singh that it was rescinding her Policy because the aforementioned records indicated that Singh's seizures began at age 15. Had RiverSource known that, it would not have issued the Policy.

On April 21, 2021, RiverSource filed an out-of-time motion for leave to amend its pleadings to file a counterclaim for fraud, rescission, and attorney's fees. The motion also sought to amend RiverSource's answer to assert a defense based on Singh's 2019 surgery. The district court referred the motion to a magistrate judge, who denied the motion on August 27, 2021. RiverSource filed objections with the district court, but the court affirmed the magistrate's order on September 28, 2021.

At the same time, RiverSource also sought summary judgment on four grounds: (1) Singh's Texas Insurance Code claims under Chapter 541 were barred by statute of limitations; (2) Singh's claims, under the Texas Prompt Payment of Claims Act ("PPOC"), failed because notice of Singh's claims was not submitted in writing; (3) Singh's Chapter 541 claims failed because liability was not reasonably clear; and (4) Singh's disability medically resolved when the 2019 surgery resolved her seizures. On September 3, 2021, the magistrate recommended granting RiverSource's motion as to the Chapter 541 claims and otherwise denying the motion. The district court did so on September 28, 2021.

Prior to trial, Singh moved to exclude the testimony of RiverSource's expert witness Dr. Keith Fairchild, asserting it was irrelevant under Federal Rule of Evidence 401 and substantially more prejudicial than probative under

6

No. 22-50036

Rule 403. RiverSource responded that Dr. Fairchild would testify that Singh's tax documents did not show any earned income at the time of her disability, which RiverSource alleges is a component of the Policy's definition of "Regular Occupation." The district court granted the motion to exclude Dr. Fairchild's testimony but stated that RiverSource could re-argue the issue after Singh testified.

RiverSource and Singh also disagreed on two jury questions RiverSource submitted. The first concerned whether Singh remained disabled post-surgery. If the jury found Singh was no longer disabled, RiverSource wanted the jury to specify the date Singh's disability ended. The second question concerned whether Singh's disability or loss was caused by a "mental/nervous disorder."[2] The district court rejected both proposed questions. It instead submitted a single yes-or-no question to the jury: "Do you find from a preponderance of the evidence that . . . RiverSource . . . failed to comply with the Policy?"[3]

At trial, the district court took another look at RiverSource's proposed witness, Dr. Fairchild. The court ultimately sustained Singh's objections to his testimony under Rules 401 and 403, finding information related to Singh's tax returns was irrelevant and "more likely to mislead the jury if we're talking about what's on a tax return as opposed to what she customarily did." As an alternative, RiverSource proffered Dr. Fairchild's deposition, but the court elected to exclude the testimony in its entirety because it

---

[2] The proposed question defined "[m]ental/nervous disorders" to include, but not be limited to, "psychotic, neurotic, personality, adjustment, emotional or behavior disorders, or disorders relating to stress, anxiety, or depression." Under the policy, benefits for mental/nervous disorders are limited to a lifetime maximum of twenty-four months.

[3] At trial, the court reexamined whether to submit RiverSource's two proposed jury questions but again decided to exclude both.

determined that "all Ms. Singh had to be doing was working at employment of some [kind] during the period in question. It doesn't matter whether it was turning a profit."[4]

On November 4, 2021, the jury found by a preponderance of the evidence that RiverSource failed to comply with the Policy. The district court entered final judgment on December 15, 2021, awarding Singh Policy benefits up to the time of trial, statutory damages under the PPOC, and attorney's fees and costs. RiverSource timely appealed on January 12, 2022.

## II.

On appeal, RiverSource contends the district court erred by: (1) denying its motion for leave to amend; (2) rejecting its proposed jury questions; (3) excluding its proposed expert testimony; (4) misinterpreting the PPOC. We address each issue in turn.

## A.

We begin with the district court's denial of RiverSource's motion for leave to amend, which we review for abuse of discretion. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 420 (5th Cir. 2013). The district court[5] denied RiverSource leave to amend its complaint on the grounds that the motion was untimely, that its counterclaims were not viable, and that the amendments would delay trial and thereby prejudice Singh. RiverSource asserts that the district court's ruling was an abuse of discretion. We disagree.

---

[4] The court further explained that it "believe[d] the lawyers are prepared to thoroughly argue about what [Singh] did [in terms of employment], and the prejudicial value of allowing testimony based solely on what tax returns show more than offsets any probative value."

[5] As noted, the district court adopted the magistrate's recommendation to deny leave to amend. For convenience, we refer only to the district court.

After a scheduling deadline has expired, pleadings may be amended only upon a showing good cause. Fed. R. Civ. P. 16(b)(4); *see S&W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003). Courts evaluate four factors to determine good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)). We consider the district court's ruling in light of those factors.

Seeking to excuse the motion's untimeliness, RiverSource first argues that it needed "certain confirmatory deposition testimony" from Singh to support its fraud counterclaims. It also emphasizes that it learned about Singh's surgery only during her 2021 deposition. We are unpersuaded. As Singh points out, RiverSource learned of potential issues with Singh's insurance application as early as July 2016, when it first investigated her disability benefits claim. RiverSource thus could have used discovery to develop possible fraud claims well before the November 2020 amendment deadline. Singh's 2019 surgery also occurred over a year before that deadline, and RiverSource offers little justification for why it waited until the 2021 deposition to inquire about her medical condition. Thus, the district court did not abuse its discretion by ascribing the untimeliness of RiverSource's motion primarily to its own discovery delays. *Cf. EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (finding denial of leave to amend "squarely within [the court's] sound discretion" where the defendant "had time to obtain discovery and seek leave to amend by the . . . deadline").

With regard to the amendment's importance, the district court reasoned that the counterclaims failed Rule 9(b)'s heightened pleading

standard[6] and were in any event barred by the four-year statute of limitations.[7] RiverSource contests these rulings, but we again disagree. As the district court found, "RiverSource plead[ed] no specific facts" to support its counterclaims. *See Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 962 n.10 (5th Cir. 1994) (finding allegations "too vague or too broad to satisfy Rule 9(b)"). And those claims would have been barred anyway. As the court found, under Rule 15, RiverSource's amended pleading related back to its original answer filed on July 29, 2020—well after limitations on the counterclaims would have run on June 6, 2020. Rule 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . (b) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Here, the "original pleading" is RiverSource's original answer, which RiverSource filed nearly two months after the expiration of the statute of limitations. *See Sw. Bell Tel. Co.*, 346 F.3d at 547 (weighing importance against the moving party due to "the likely failure of the proposed counterclaims"); *Denson v. BeavEx, Inc.*, 612 F. App'x 754, 758 (5th Cir. 2015) (unpublished) (finding no abuse its discretion when district court refused leave to amend on the "basis of futility").[8]

---

[6] Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[7] Under Texas law, fraud claims are subject to a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4).

[8] RiverSource also argues its proposed amendment was important because Singh's 2019 surgery somehow converted her disability into a mental or nervous disorder. We disagree. Even if that were so (which we need not decide), the Policy would still entitle

No. 22-50036

Finally, as to prejudice, the district court reasoned the amendment would have altered the case completely, prejudicing Singh. We agree. From its inception, the case concerned whether Singh's impairments qualified her for disability benefits under the Policy. RiverSource, however, tried to turn it into a fraud case—and did so by seeking to add counterclaims after the discovery deadline and just days before dispositive motions were due.[9] The district court did not abuse its discretion by ruling that this late-breaking change would prejudice Singh. *See Fahim*, 551 F.3d at 348 (ruling against movant because non-movant "would have been prejudiced if it had been forced to defend against a new claim . . . so late in the litigation").

In sum, "[w]hen combined with the prejudice to [Singh] in allowing untimely . . . counterclaims [and defenses], and the likely failure of the proposed counterclaims on the merits, we find that the court did not abuse its 'broad discretion to preserve the integrity and purpose of the pretrial order.'" *Sw. Bell Tel. Co.*, 346 F.3d at 547 (quoting *S & W Enters., LLC*, 315 F.3d at 535).

B.

Next, RiverSource challenges the district court's rejection of its two proposed jury questions. We review such challenges for abuse of discretion, "afford[ing] the trial court great latitude in the framing and structure of jury instructions." *SED Holdings, L.L.C. v. TM Prop. Sols., L.L.C. (In re 3 Star*

---

Singh to benefits for twenty-four months following the surgery. Singh was awarded monthly policy benefits through October 2021, within that twenty-four-month period.

[9] The same is true about RiverSource's proposed defense concerning Singh's 2019 surgery—allowing the amendment would have changed the case significantly. Instead of arguing that Singh was not totally disabled under the Policy, as RiverSource did from the beginning, the amendment would have moved the goal posts to argue that Singh's disability was actually due to a mental or nervous disorder.

11

*Props., L.L.C.)*, 6 F.4th 595, 609 (5th Cir. 2021) (quoting *Young v. Bd. Of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019)). Verdict forms, which are part of the jury instructions, are assessed in light of the instructions as a whole. *Id.* at 610 (citations omitted). Under Federal Rule of Civil Procedure 49(a), a district court must submit to the jury all material issues raised by the pleadings and evidence. *Broad. Satellite Int'l, Inc. v. Nat'l Digit. Television Ctr., Inc.*, 323 F.3d 339, 342 (5th Cir. 2003). The court commits reversible error if it fails to submit an interrogatory on a question of fact. *Id.*

RiverSource argues that the district court erred by submitting only one generic question asking whether RiverSource "failed to comply with the Policy." This was error, it says, because the question prevented the jury from making findings about the limits of the Policy coverage. Specifically, RiverSource argues the jury should have been allowed to find that Singh's disability ended when her 2019 surgery resolved the seizures (its proposed Question 2). Alternatively, RiverSource contends the jury should have been asked whether Singh's injuries were really mental or nervous disorders, which are covered only up to twenty-four months (its proposed Question 3). By rejecting both of its proposed questions, RiverSource argues the court thwarted the jury from resolving these fact issues.

We disagree. Given the evidence at trial, the district court did not abuse its discretion by rejecting RiverSource's proposed questions. Both of those questions aimed to counteract Singh's claim that she met the definition of "Total Disability" from the day of her accident through the date of the trial.[10] As to Question 2, regarding whether Singh's disability ceased post-surgery, Singh presented uncontroverted evidence that her cognitive

---

[10] The Policy defines "Total Disability" as the inability "to perform the material and substantial duties of Your Regular Occupation."

impairment persisted even after the 2019 surgery resolved her seizures. Thus, it was not an abuse of discretion to reject a question focusing only on the cessation of her seizures. As to Question 3, concerning the nature of Singh's disability, RiverSource offered no evidence supporting the conclusion that she actually suffered from a nervous disorder. To the contrary, Singh offered uncontradicted evidence (for instance, from MRIs) that she suffered cognitive impairment resulting from scarring and damage to her amygdala and hippocampus. Consequently, the district court did not abuse its discretion by rejecting a question about whether Singh was really suffering from a mental disorder.[11]

## C.

RiverSource next argues that the district court abused its discretion by excluding Dr. Fairchild, RiverSource's expert witness. *See French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011) (reviewing exclusion of expert witness for abuse of discretion). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 583 (5th Cir. 2004) (citation omitted). And even if the district court abused its discretion, we will reverse only if the ruling affected the substantial rights of the complaining party. *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).

Using Singh's tax returns, Dr. Fairchild would have testified that Singh did not earn most of her income from her work as a property developer because she lacked taxable income. The district court ruled this testimony

---

[11] It bears noting that, in the future, RiverSource could still assert that Singh's disability has abated.

was irrelevant to whether Singh had a Regular Occupation under the Policy.[12] As the court explained: "[A]ll . . . Singh had to be doing was working at employment of some [kind] during the period in question. It doesn't matter whether it was turning a profit." Alternatively, the court ruled under Rule 403 that any probative value from Dr. Fairchild's testimony would have been substantially outweighed by its unfair prejudice.

Like the district court, we fail to see the relevance of Dr. Fairchild's proffered testimony. Whether or not Singh earned a profit from her work as a property developer—and regardless of whether that income was passive or active—there was no question that this was her occupation within the Policy's meaning. To borrow the district court's apt analogy, that would be like saying a novelist lacked a "regular occupation" because she didn't publish a book last year or because the books she published didn't turn a profit. Moreover, as Singh points out, "Dr. Fairchild agreed Singh's regular occupation was a property developer, and Dr. Fairchild testified that he was not qualified to opine on the impact of his testimony on coverage." We therefore see no abuse of discretion in the district court's excluding Dr. Fairchild's testimony under Rule 401 as "not probative of any fact of consequence." *United States v. Miller*, 520 F.3d 504, 511 (5th Cir. 2008).

But even assuming an abuse of discretion, the exclusion of Dr. Fairchild's testimony did not affect RiverSource's substantial rights. The jury had ample evidence before it—*i.e.*, Singh's trial testimony and a joint exhibit regarding Singh's finances during the relevant period—to evaluate whether Singh satisfied the Policy's definition of "Regular Occupation." Furthermore, the term has two alternative definitions under the Policy, and

---

[12] "Regular Occupation" is defined as the job or occupation (i) in which the insured works "on a full-time basis" or (ii) from which the insured derives a majority of the insured's earned income at the time of disability.

Dr. Fairchild's testimony was not even arguably relevant to the first definition—namely, the job or occupation that Singh works on a full-time basis. In fact, in his deposition, Dr. Fairchild agreed that Singh "was doing property development." *See Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 741 (5th Cir. 2020) ("An error does not affect substantial rights if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.") (citation omitted)).

### D.

Finally, we consider the district court's award of damages under the PPOC, which we review *de novo*. *Agredano v. State Farm Lloyds*, 975 F.3d 504, 505 n.2 (5th Cir. 2020). An insurer that violates its prompt payment obligations under Chapter 542B of the Texas Insurance Code is liable for "interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." TEX. INS. CODE § 542.060(a). An insurer's liability depends, among other things, on the insured's filing a "notice of claim," *id.* § 542.055(a), defined as "any written notification provided by a claimant to an insurer that reasonably apprises the insurer of the facts relating to the claim." *Id.* § 542.051(4). On appeal, RiverSource argues that Singh failed to submit a "written notification" of her claim, as required by the statute.

We disagree. Whereas Singh initially phoned RiverSource about her claim, RiverSource followed up by sending Singh an "Insured's Initial Claim of Disability" form. The form's opening instructions read: "To present your claim for benefits, you must complete this form." Singh filled out and returned the form to RiverSource. That satisfied the statute's requirement of a "written notification" that "reasonably apprises the insurer of the facts relating to the claim." TEX. INS. CODE § 542.051(4). Indeed, RiverSource even stipulated that Singh provided completed forms to initiate her benefits

claim on July 26, 2016.

Nonetheless, RiverSource contends Singh failed the written notice requirement because she subsequently responded to RiverSource's requests for information by telephone. We disagree. RiverSource's only authorities for this argument are cases where the insured provided no written notice whatsoever. *See, e.g.*, *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 208 (Tex. App.—Austin 2005, pet. denied) ("[T]he McMillins do not claim they sent written notice to State Farm of their claim; instead, they rely on State Farm's printed telephone logs."). In contrast to those cases, Singh provided written notice of her claim on RiverSource's own form.

We therefore conclude that the district court correctly interpreted the PPOC by awarding Singh statutory interest.

AFFIRMED.